S.A. DISCOUNT LIQUOR, INC.,
Plaintiff-Appellant,

v.

TEXAS ALCOHOLIC BEVERAGE
COMMISSION, et al.,
Defendants-Appellees.

No. 82–1161.

United States Court of Appeals,
Fifth Circuit.

June 27, 1983.

Samuel H. Bayless, San Antonio, Tex., for plaintiff-appellant.

W. Reed Lockhoof, Asst. Atty. Gen., Austin, Tex., for defendants-appellees.

Before GARZA, RANDALL and GARWOOD, Circuit Judges.

GARZA, Circuit Judge:

Plaintiff-appellant, San Antonio Discount Liquor, Inc., is the lawful holder of a package store permit issued by defendants-appellees, the Texas Alcoholic Beverage Commission (hereinafter T.A.B.C.). Generally, the holder of a package store permit may sell liquor in original containers from his licensed premises to retail customers for off-premises consumption only and not for the purpose of resale. Tex.Alco.Bev.Code

Ann. § 22.01 (Vernon 1979). Plaintiff also holds a local distributor's permit which may be issued only to the holder of a package store permit. Tex.Alco.Bev.Code Ann. § 23.03 (Vernon 1978). The local distributor's permit authorizes the plaintiff to sell and distribute alcoholic beverages to mixed beverage and private club permittees.[1] Tex.Alco.Bev.Code Ann. § 23.01 (Vernon 1978). Finally, plaintiff holds a retail dealer's off-premise license which allows it to "sell beer in lawful containers to consumers, but not for resale and not to be opened or consumed on or near the premises where sold." Tex.Alco.Bev.Code Ann. § 71.01 (Vernon 1978).

Beginning in 1978 the plaintiff entered into contracts to make wholesale sales of Coors beer to out of state customers. These sales were to be shipped entirely outside the state of Texas and were to be resold by the various purchasers to customers in states other than Texas. Pursuant to these contracts, the plaintiff delivered wholesale quantities of beer to carriers in San Antonio, Texas, for shipment entirely to customers outside the state of Texas.

Under Texas law, for the plaintiff to make this type of wholesale sale it must obtain a general distributor's license or a local distributor's license. Tex.Alco.Bev. Code Ann. §§ 64.01, 64.05 (Vernon 1978). Plaintiff, however, could not obtain a general distributor's license nor a local distributor's license without surrendering its retail dealer's off-premise license [2] and its package store permit.[3] The plaintiff, therefore, contracted to deliver and delivered wholesale quantities of beer to out of state customers in violation of Texas law.

Consequently, the T.A.B.C. in September 1979, filed an administrative complaint

seeking suspension and/or cancellation of the plaintiff's Texas Alcoholic Beverage Code licenses and permits. In March 1980, the T.A.B.C. suspended plaintiff's licenses at three of its premises in San Antonio for a period of five days and assessed civil penalties amounting to $3,750. The plaintiff brought suit in the United States District Court seeking an injunction prohibiting the T.A.B.C. from interfering in any manner with its sale of beer to customers outside the state of Texas. Plaintiff alleged that the T.A.B.C.'s actions in prohibiting the plaintiff from making interstate sales of wholesale quantities of Coors beer was repugnant to Article I, Section 8, Clause 3 of the United States Constitution and was an impermissible exercise of the police power of the state of Texas in that it prohibited the plaintiff from engaging in a lawful interstate business. The district court, in its Order denying the Application for Temporary Injunction (Transcript, pp. 39–41) stated that the Twenty-First Amendment permitted Texas to prohibit sales of beer within Texas notwithstanding the fact that the shipments of the beer were made entirely to points located outside the state of Texas and to customers located outside the state of Texas. Subsequently, the district court granted the T.A.B.C.'s motion for summary judgment, and the plaintiff now brings this appeal.

The sole issue before us is whether the portion of the Texas Alcoholic Beverage Code which prohibits the plaintiff, as the holder of a package store permit and a retail dealer's off-premise license, from selling wholesale quantities of beer to out of state customers for resale out of the state, is violative of Article I, Section 8, Clause 3

---

1. The holder of a mixed beverage permit or a private club registration permit may only serve or sell liquor for on-premises consumption. Tex.Alco.Bev.Code Ann. §§ 28.01, 32.01 (Vernon 1978).

2. Section 71.01 of the Texas Alcoholic Beverage Code prohibits the holder of a retail dealer's off-premise license from selling beer for resale.

3. Sections 64.05 and 65.05 of the Texas Alcoholic Beverage Code provide that a general distributor's license and a local distributor's license may not be issued to the holder of a package store permit. Note, since a local distributor's permit may only be issued to the holder of a package store permit, Tex.Alco.Bev. Code Ann. § 23.03 (Vernon 1978), if the plaintiff surrendered its package store permit it would also have to surrender its local distributor's license.

of the Constitution of the United States. We agree with the district court and find that the Texas scheme is not repugnant to the Commerce Clause of the Constitution.

■■■ The Commerce Clause limits the actions individual states can take affecting interstate commerce. *Cooley v. Board of Wardens,* 53 U.S. (12 How) 299, 300, 13 L.Ed. 996 (1851). It is intended to promote free trade among the states. *Baldwin v. G.A.F. Seelig, Inc.,* 294 U.S. 511, 522, 55 S.Ct. 497, 500, 79 L.Ed. 1032 (1935). If, however, a state statute evenhandedly effectuates a legitimate local public interest and its effects on interstate commerce are only incidental, "it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■■■ The limitations placed on the states by the Commerce Clause, however, have been altered with respect to alcoholic beverages by the Twenty-First Amendment. "[T]he Twenty-First Amendment protects a state which chooses to impose a burden on the sale of alcohol which would be impermissible under the Commerce Clause if the item burdened was not alcohol." *Wine Industry of Florida, Inc. v. Miller,* 609 F.2d 1167, 1170 (5th Cir.1980). The Twenty-First Amendment does not pro tanto repeal the Commerce Clause; it merely requires that each be looked at with regard to the other and in the context of the case at hand. *Craig v. Boren,* 429 U.S. 190, 206, 97 S.Ct. 451, 461, 50 L.Ed.2d 397 (1976). The result is that states may prohibit or promulgate definitely prescribed conditions on the manufacture, sale, transportation, or possession of intoxicants and may exercise broad discretion in employing the means of limitation or prohibition. *Ziffrin, Inc. v. Reeves, Commissioner of Revenue of Kentucky,* 308 U.S. 132, 138, 139, 60 S.Ct. 163, 166, 167, 84 L.Ed. 128 (1939).

The state of Texas has chosen to prohibit retail sellers of alcoholic beverages from also being wholesale sellers of alcoholic beverages. The prohibition was enacted as part of a plan instituted by the Texas Legislature to develop a three-tier system of distribution in the Texas alcoholic beverage industry. To avoid the harmful effects of vertical integration in the intoxicants industry, the state has effectively restricted manufacturers, wholesalers (or distributors in the legislature's terminology) and retailers to one level of activity. This restriction eliminates the possibility of "tied house" relationships or vertical integration and, therefore, prevents companies with monopolistic tendencies from dominating all levels of the alcoholic beverage industry.[4] The state of Texas is surely acting within its discretion by placing reasonable restrictions on the intoxicants industry in order to prevent these evils.

The beer which the plaintiff sold to and proposed to sell to out of state customers was purchased by the plaintiff under sanction of the T.A.B.C. through the Texas Alcoholic Beverage Code licenses which the plaintiff held. Without these licenses, the plaintiff could not have obtained the beer which it now wishes to resell out of state. Plaintiff apparently wishes for this court to allow it to take advantage of the benefits of the Texas licensing system, which allows the plaintiff to purchase the beer from dis-

---

4. In *Neel v. Texas Liquor Control Board,* 259 S.W.2d 312, 316–317 (Tex.Civ.App.—Austin 1953, writ ref'd n.r.e.), the court stated:

We need not dwell upon the evils of the "tied house." It is obvious that one result of such control could be the creation of a monopoly for certain brands of liquor as well as dictating prices. The importance of preventing such control is reflected by a report of the United States Department of Commerce in 1941 titled State Liquor Legislation wherein on page 20 it is stated:

■■■

The liquor control legislation enacted in the several states since the repeal of the Eighteenth Amendment to the Federal Constitution has uniformly attempted to prevent a recurrence of the evils that were prevalent before prohibition when the large liquor interests controlled, through vertical and horizontal integration, the productive and distributive channels of the industry.

**294**

tributors, and to avoid the restrictions, which prevents it from selling to out of state retailers. Considering the reasonableness of the purpose of the restriction imposed by the state, this court would be circumventing the authority given the states by the Twenty-First Amendment to allow such a result.

Since we find the Texas statutes are not violative of the Commerce Clause and are consistent with the state's authority under the Twenty-First Amendment, the judgment of the district court is affirmed.

AFFIRMED.